**Electronically Filed
Supreme Court
SCWC-21-0000098
06-MAR-2023
08:13 AM
Dkt. 15 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

PHILLIP J. BARKER,
Petitioner/Plaintiff-Appellant,

vs.

CHRISTOPHER YOUNG, ADMINISTRATOR,
HAWAIʻI CRIMINAL JUSTICE DATA CENTER
Respondent/Defendant-Appellee.

_____

SCWC-21-0000098

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-21-0000098; 1CSP-20-0000183)

MARCH 6, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This is a statutory interpretation case.  We are called upon to interpret Hawaiʻi Revised Statutes ("HRS") § 831-3.2(a) (2014 & Supp. 2018), which allows for expungement of arrest records.  It provides in relevant part:

> **§ 831-3.2. Expungement orders**
> (a) The . . . attorney general's duly authorized representative . . . , upon written application from a person arrested for, or charged with but not convicted of a crime, . . . shall issue an expungement order annulling, canceling, and rescinding the record of arrest; provided that an expungement order shall not be issued:
> . . . .
> > (2) For a period of five years after arrest or citation in the case of a petty misdemeanor or violation where conviction has not been obtained because of a bail forfeiture[.]

Phillip J. Barker ("Barker") was arrested for harassment, a petty misdemeanor. He was eventually convicted of disorderly conduct as a violation. He then applied to the Hawai'i Criminal Justice Data Center ("HCJDC") for expungement of his arrest record pursuant to HRS § 831-3.2. He asserted that because HRS § 701-107(7) (2014) of the Hawai'i Penal Code provides that a violation does not constitute a crime, he is entitled to expungement based on the plain language of HRS § 831-3.2(a).

The HCJDC denied his application, concluding that Barker had been convicted of a "crime" within the meaning of HRS § 831-3.2(a), pointing to HRS § 831-3.2(a)(2), which provides that an expungement order shall not issue for five years after arrest "in the case of a petty misdemeanor or violation where conviction has not been obtained because of a bail forfeiture[.]"

Barker then sought an order from the Circuit Court of the First Circuit ("circuit court") to require the HCJDC to expunge

his arrest record. The circuit court[1] granted judgment in favor of the HCJDC.

Barker appealed to the Intermediate Court of Appeals ("ICA"), which affirmed the circuit court in a published opinion. See Barker v. Young, 151 Hawai'i 312, 511 P.3d 811 (App. 2022). The ICA ruled it could not apply the Penal Code definition of crime to HRS § 831-3.2(a) because of the language in subsection (a)(2). 151 Hawai'i at 320, 511 P.3d at 819. Essentially, the HCJDC, circuit court, and ICA all concluded that inclusion of the word "violation" in HRS § 831-3.2(a)(2) indicates a "violation" is a "crime" under HRS § 831-3.2(a).

On certiorari, Barker asks "[w]hether the ICA gravely erred in holding that the word 'crime' in [HRS § 831-3.2(a)] is ambiguous such that the word includes violations?"

Applying rules of statutory interpretation, we hold that under the plain language of HRS §§ 831-3.2(a) and 701-107(7), a person arrested for or charged with a crime (including a petty misdemeanor), but convicted of a violation, is eligible for arrest record expungement because a "violation" is not a "crime."[2]

---

[1]    The Honorable Bert I. Ayabe presided.

[2]    The statute allows expungement only of arrest records; conviction records are not at issue.

We therefore vacate the circuit court's order granting the HCJDC's motion for summary judgment and its final judgment, as well as the ICA's judgment on appeal, and we remand to the circuit court for further proceedings consistent with this opinion.

## II.  Background

### A.  HCJDC proceedings

On October 7, 2017, Barker was arrested for harassment in violation of HRS § 711-1106(1)(a) (2014), a petty misdemeanor.[3] On November 21, 2017, Barker pled no contest and was found guilty of the amended charge of disorderly conduct under HRS § 711-1101(1)(b) (2014), as a violation.[4]

---

[3]  HRS § 711-1106(1)(a) & (2) provide:

> (1)  A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:
>
>> (a)  Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact[.]
>> . . . .
>
> (2)  Harassment is a petty misdemeanor.

[4]  HRS § 711-1101(1)(b) & (3) provide:

> (1)  A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:
>> . . . .
>> (b)  Makes unreasonable noise . . . .
> . . . .
> (3)  Disorderly conduct is a petty misdemeanor if it is the defendant's intention to cause substantial harm or serious inconvenience, or if the defendant persists in disorderly conduct after reasonable warning or request to desist.  Otherwise disorderly conduct is a violation.

On June 20, 2019, Barker submitted an application to the HCJDC to have his harassment arrest record expunged pursuant to HRS § 831-3.2. Barker asserted that because he was found guilty of a "violation" and not a "crime," he is eligible for expungement. The HCJDC denied Barker's application on the basis that arrests resulting in convictions, even for violations, do not qualify for expungement.

## B. Circuit court proceedings

On October 19, 2020, Barker filed a first amended complaint in circuit court. Barker argued that under HRS § 701-107(5),[5] a violation does not constitute a crime, and therefore, Barker was "not convicted of a crime" within the meaning of the expungement statute. Barker requested an order requiring the HCJDC to expunge his record of arrest, or alternatively, a declaratory judgment that he is entitled to have his arrest record expunged.

Barker and the HCJDC then filed cross-motions for summary judgment. Barker argued that the only relevant definitions of

---

[5] HRS § 701-107 provides in relevant part:

> (1) An offense defined by this Code or by any other statute of this State for which a sentence of imprisonment is authorized constitutes a crime. Crimes are of three grades: felonies, misdemeanors, and petty misdemeanors. . . .
> . . . .
> (5) An offense defined by this Code or by any other statute of this State constitutes a violation if it is so designated in this Code or in the law defining the offense or if no other sentence than a fine, or fine and forfeiture or other civil penalty, is authorized upon conviction or if it is defined by a statute other than this Code which provides that the offense shall not constitute a crime. A violation does not constitute a crime, and conviction of a violation shall not give rise to any civil disability based on conviction of a criminal offense.

"crime" and "violation" are found in HRS § 701-107 of the Hawaiʻi Penal Code, which explicitly provides that "[a] violation does not constitute a crime, and conviction of a violation shall not give rise to any civil disability based on conviction of a criminal offense."  Barker asserted that the legislature could have used the word "offense" in HRS § 831-3.2(a), which would have included violations, but it did not.

HCJDC argued that the definitions of "violation" and "crime" in HRS § 701-107 are inapplicable to the expungement statute.  The HCJDC maintained that the legislative history of the expungement statute indicates an intent to "minimize or abolish extrajudicial penalties which may confront a person who has a record of arrest, even though such arrest did not lead to conviction."  HCJDC noted that Barker's arrest for harassment did lead to his conviction of a violation.

The HCJDC also relied on HRS § 831-3.2(a)(2), which provides that an expungement order shall not be issued "[f]or a period of five years after arrest or citation in the case of a petty misdemeanor or violation where conviction has not been obtained because of a bail forfeiture[.]"  HCJDC posited that if the legislature had intended "violation" and "crime" to be defined as in the Hawaiʻi Penal Code, "it would follow that a record of arrest or citation for a violation would always qualify to be expunged regardless of whether the arrest or

citation led to a conviction." HCJDC asserted it would be illogical to require it to maintain records of violations if they would subsequently be expunged irrespective of later convictions. Finally, citing Crime, Black's Law Dictionary (11th ed. 2019), the HCJDC contended the term "crime" in § 831-3.2 should be interpreted according to its common legal definition, which is an "act that the law makes punishable[.]"

The circuit court agreed with the HCJDC. It entered an order denying Barker's motion and granting HCJDC's motion on March 1, 2021. It also entered its judgment on that day.

## C. ICA proceedings

On March 3, 2021, Barker appealed to the ICA. The parties' briefs repeated arguments made in the circuit court. In a published opinion, the ICA affirmed the circuit court. See Barker, 151 Hawai'i 312, 511 P.3d 811. The ICA concluded the term "crime" in HRS § 831-3.2(a) is ambiguous. 151 Hawai'i at 317-18, 511 P.3d at 816-17. The ICA ruled that it could not apply the Penal Code definition of crime to HRS § 831-3.2 because of the language in subsection (a)(2) delaying expungement eligibility for a "violation where conviction has not been obtained because of a bail forfeiture[.]" 151 Hawai'i at 318, 511 P.3d at 817 (quoting HRS § 831-3.2(a)(2)). The ICA also construed the intent of the expungement law as to allow expungements only when there was no conviction. 151 Hawai'i at

7

318-20, 511 P.3d at 817-19 (citing Conf. Comm. Rep. No. 21, in 1975 Senate Journal, at 859; Conf. Comm. Rep. No. 18, in 1975 House Journal, at 885). The ICA concluded that interpreting the term "crime" in HRS § 831-3.2(a) to include violations is rational, reasonable, and consistent with legislative intent. 151 Hawai'i at 320, 511 P.3d at 819 ("A 'rational, sensible[,] and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable . . . .'" (quoting In re Doe, 90 Hawai'i 246, 251, 978 P.2d 684, 689 (1999))). Hence, the ICA held that because Barker's harassment arrest resulted in a conviction for a violation, Barker does not meet the statutory expungement criteria. 151 Hawai'i at 320-21, 511 P.3d at 819-20 (citing HRS § 831-3.2(a)).

**D.   Certiorari proceedings**

Barker's July 8, 2022 application presents one question: whether the ICA gravely erred in holding that the word "crime" in HRS § 831-3.2(a) is ambiguous such that the word includes violations?

In addition to his previous arguments, Barker notes the principle of statutory interpretation that "where the statutory language is plain and unambiguous, [a court's] sole duty is to give effect [t]o its plain and obvious meaning." Barker further argues that "[w]here there is no ambiguity in the language of a statute, and the literal application of the language would not

produce an absurd or unjust result . . . there is no room for judicial construction[.]"

Barker also points out that it is only the record of arrest that he seeks to expunge, not the conviction. He argues that there is no ambiguity in the statute and that if the legislature meant "crime" to mean "offense," which includes crimes and violations,[6] then it would have used the word "offense" instead of "crime" in HRS § 831-3.2(a). Barker points out that the statute has been amended eight times without the word "crime" being changed to "offense."

Barker questions the logic of the ICA's reasoning that "crime" must include "violations" because HRS § 831-3.2(a)(2) provides an exception for expungement in the case of violations when there is bail forfeiture.[7]

### III.  Standard of Review

"Statutory interpretation is a question of law reviewable de novo." State v. Wheeler, 121 Hawai‘i 383, 390, 219 P.3d 1170, 1177 (2009) (cleaned up).

Our interpretation is shaped by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of

---

[6]    HRS § 701-102(1) (2014) provides, "No behavior constitutes an offense unless it is a crime or violation under this Code or another statute of this State."

[7]    The HCJDC did not file a response to Barker's application.

statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

When there is ambiguity in a statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

Id. (cleaned up).

## IV. Discussion

Whether Barker's arrest record is eligible for expungement is governed by HRS § 831-3.2, which provides in relevant part:

**§ 831-3.2. Expungement orders**
(a) The . . . attorney general's duly authorized representative . . . , upon written application from a person arrested for, or charged with but not convicted of a crime, . . . shall issue an expungement order annulling, canceling, and rescinding the record of arrest; provided that an expungement order shall not be issued:
. . . .
(2) For a period of five years after arrest or citation in the case of a petty misdemeanor or violation where conviction has not been obtained because of a bail forfeiture[.]

As noted in Section III above, statutory interpretation begins with the premise that when statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. See Wheeler, 121 Hawai'i at 390, 219 P.3d at 1177.

HRS § 831-3.2(a) provides that a person arrested for but not convicted of a crime is eligible for an arrest record expungement. Barker was charged with harassment, a petty

10

misdemeanor. He was convicted of disorderly conduct as a violation. Under HRS § 701-107, a petty misdemeanor is a crime, but a violation is not. Barker was therefore "charged with but not convicted of a crime[.]" See HRS § 831-3.2(a). Hence, he is eligible for expungement of his arrest record.

The exception in HRS § 831-3.2(a)(2) does not create an ambiguity as to the plain language of HRS § 831-3.2(a). HRS § 831-3.2(a)(2) provides that if there is no conviction on a petty misdemeanor or violation charge because of a bail forfeiture (non-appearance in court), an expungement order cannot issue until five years from the date of arrest or citation. State v. Vallesteros, 84 Hawai'i 295, 933 P.2d 632 (1997), held that police officers "may arrest those who commit violations, not just crimes, in the officers' presence[,]" "but only insofar as the offense is not a traffic-related violation." 84 Hawai'i at 301, 933 P.2d at 638. But pursuant to HRS § 831-3.2(a), if there is a conviction on a charged violation, an arrest record based on that conviction is still eligible for expungement.

The rules of statutory interpretation require us to apply a plain language analysis when statutory language is clear. Only when there is an ambiguity in a statute are we to resort to other methods of statutory interpretation. As we said in State v. Obrero, 151 Hawai'i 472, 517 P.3d 755 (2022):

11

> The *in pari materia* canon of statutory interpretation is a useful tool for interpreting ambiguous or doubtful statutes.  But it should not be used to muddle the meaning of unequivocal, but inconvenient, black letter law.  Our rule is "What is clear in one statute may be called upon in aid to explain what is doubtful in another."  It is not: "What is clear in one statute may be called upon to create doubt in another."

151 Hawai'i at 479, 517 P.3d at 762 (cleaned up).

Hence, what is clear in HRS § 831-3.2(a)(2) may not be called upon to create doubt in HRS § 831-3.2(a).  Only "when there is ambiguity in a statute," then, "the meaning of the ambiguous words may be sought by" applying other methods of statutory interpretation, such as the *in pari materia* canon, or by "resort[ing] to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law."  Wheeler, 121 Hawai'i at 390, 219 P.3d at 1177 (cleaned up).  HRS § 831-3.2(a)(2) is equally clear.  It provides that if there is no conviction on a petty misdemeanor or violation charge because of a bail forfeiture (non-appearance in court), an expungement order cannot issue until five years from the date of arrest or citation.

Finally, we appreciate the concern expressed by the HCJDC that interpreting the term "crime" in HRS § 831-3.2(a) as excluding "violations" would seemingly preclude a person arrested for and then convicted of a violation from obtaining expungement of an arrest record.  That issue, however, is not

before us at this time.[8]  Today, we address the issue before us and hold that under the plain language of HRS §§ 831-3.2(a) and 701-107(7), a person arrested for or charged with a crime (including a petty misdemeanor) but convicted of a violation is eligible for expungement because a "violation" is not a "crime."

## V.  Conclusion

Under the plain language of HRS §§ 831-3.2(a) and 701-107(7), a person arrested for or charged with a crime, but convicted of a violation, is eligible for arrest record expungement because a "violation" is not a "crime."

We therefore vacate the circuit court's order granting the HCJDC's motion for summary judgment and its final judgment, as well as the ICA's judgment on appeal, and we remand to the circuit court for further proceedings consistent with this opinion.

Earle A. Partington
for petitioner

Candace J. Park
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins



---

[8]     If such a case were to arise, other rules of statutory interpretation could be triggered.  For example, "[i]f a literal construction of statutory language would produce an absurd result, we presume that result was not intended and construe the statute in accord with its underlying legislative intent."  State v. Abella, 145 Hawai'i 541, 552, 454 P.3d 482, 493 (2019) (citation omitted).